Raymond F. Beels v. Commissioner.
Beels v. Commissioner
Docket No. 31476.
United States Tax Court
1953 Tax Ct. Memo LEXIS 383; 12 T.C.M. (CCH) 101; T.C.M. (RIA) 53039; February 9, 1953
*383 1. Partnership. - Petitioner purchased a bar business for $10,000 taking title as sole proprietor. He derived the purchase price from savings, from funds borrowed by his wife and given by her to him, and from other funds borrowed from acquaintances. He applied for a liquor license, executed bond required by law, and executed application for approval of city authorities as sole proprietor. The wife aided in the operation of the bar in the capacity of an employee. Wife had no control over income or disbursements. She had no control over proceeds of sale. Held: No partnership existed between petitioner and his wife. 2. Capital gains. - Petitioner, on the cash basis, sought to offset against capital gain an expense of sale which was unpaid in taxable year. Held: Unpaid expenses may not be offset against capital gains where taxpayer is on cash basis of accounting. 3. Inventory. - Retail liquor business sold by petitioner during taxable year. In computing cost of goods sold no closing inventory value was taken into account. Respondent determined value of inventory at date of sale and added the amount to income. Held: Where purchase and sale of merchandise is income-producing factor, *384 opening and closing inventories are necessary in computation of cost of goods sold. Anthony L. Lutomski, Esq., for the petitioner. Peter K. Nevitt, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in income tax for the year ending December 31, 1945, in the amount of $5,824.88. The three issues for decision are: (1) Did the Commissioner err in determining that the petitioner's wife, Lilyan Isabel Beels, could not be recognized as a partner for tax purposes, and that alleged partnership income reported by her is taxable to the petitioner? (2) Did the Commissioner err in disallowing an amount of $5,000 claimed by petitioner as an offset against a capital gain realized in 1945? (3) Did *385 the Commissioner err in including as additional income the amount of $3,663.48 determined to be the value of the closing inventory of business sold by petitioner in the taxable year 1945? Findings of Fact The stipulated facts are found accordingly and included herein by reference. The petitioner and his wife resided during the taxable year in Detroit, Michigan, and filed separate timely Federal income tax returns, prepared on the cash receipts and disbursements basis, with the collector of internal revenue for the district of Michigan. On March 31, 1947, petitioner filed an amended individual Federal income tax return for the year 1945 with the collector for Michigan, in which he included gross income previously reported by his wife and in which he claimed exemptions for his wife and two sons. No assessment was made upon the amended return. The notice of deficiency is based upon the petitioner's original return. Petitioner also filed a partnership return for the taxable year 1945 with the collector for Michigan. Petitioner and his wife did not file a partnership return for the year 1944. Petitioner's wife filed no individual or joint tax returns for any year prior to 1945, with *386 the exception of a joint return filed with her husband in 1939. Issue 1. - Alleged Partnership Petitioner had worked for the Goebel Brewing Company of Detroit as a beer truck driver for 11 years. His wife and two minor children resided with him in said city, the wife's primary occupation being that of housewife. The wife's godmother, Anna Tamol, prior to August 1944 owned and operated in her own sole name a retail liquor establishment located on Van Dyke Boulevard in said city. Petitioner had attempted to purchase the business on several occasions. Bars of like character and location were worth approximately $20,000. Mrs. Tamol and her husband, Joseph Tamol, owned the premises wherein the business was conducted. In August of 1944 she sold said business to petitioner for $10,000 cash, and entered into a lease with petitioner of the premises involved for a term of five years. The record is unsatisfactory as to any provisions of said lease with respect to renewal thereof, but we conclude from the record as a whole that the usual clause requiring consent of the landlord to renewal was included therein. Mrs. Tamol entered into said lease and sale of the premises to petitioner on the *387 basis of an arm's length transaction. She was not influenced therein by her relationship to petitioner's wife. Petitioner and his wife had for some time saved their money with the view in mind of using the savings to purchase a home. All of such savings were derived from the earnings of petitioner, but they were not sufficient to defray the purchase price of the bar. The wife obtained from her father the sum of $2,000 in cash which she gave to petitioner. Petitioner. Petitioner obtained other funds by borrowing from friends and business acquaintances sufficient, together with the savings referred to and the $2,000 obtained from his wife, to pay for and acquire the liquor establishment. The business was thereafter known and conducted as Ray's Bar. In 1944 when Ray's Bar was purchased by petitioner it was extremely difficult to obtain employees to aid in the operation of the business. During that year and 1945 petitioner conducted and managed the business and waited upon the customers virtually single-handedly. One of the children referred to had been in ill health prior to acquisition of Ray's Bar by petitioner and during the year here involved was not entirely recovered, with the *388 result that the wife was unable, except for Sundays and occasional nights, to aid petitioner in carrying on the business. When she was able to help, however, she waited upon the customers and upon occasion tended bar. At all times, petitioner personally managed the business and controlled the funds thereof. On numerous occasions petitioner indicated he was the sole owner of the business. These occasions were as follows: (1) On Michigan Liquor Control Commission Investigation Report, dated July 28, 1944, he stated he was sole owner, (2) on application for class C license, dated August 12, 1944, he signed as owner and his wife signed as a witness to his signature, (3) on bond in connection with class C license, dated August 12, 1944, petitioner signed as owner, (4) on the assignment of interest in license, dated August 14, 1944, the assignment was made from Anna Tamol to petitioner, (5) on the renewal application for class C license and the bond used in connection with said license, both dated April 17, 1945, petitioner was indicated as sole owner, (6) on class C license for the year 1945 petitioner was indicated as sole licensee, (7) on Employer's Application for Identification Number *389 under Federal Insurance Contributions Act (F.I.C.A.), dated August 14, 1944, petitioner indicated the business was an individual proprietorship and that he was the owner, (8) on retail liquor dealer's Special Federal Tax return for the period from August 1944 to June 1945, dated August 31, 1944, petitioner identified himself as owner, (9) on Employer's F.I.C.A. tax returns, dated October 18, 1944, January 17, 1945, July 11, 1945, July 30, 1945, and October 24, 1945, petitioner identified himself as owner, and (10) on retail liquor dealer's Special Federal Tax return, dated July 31, 1945, for the period July 1945 to June 30, 1946, petitioner identified himself as an individual proprietor. During the time the alleged partnership, Ray's Bar, was engaged in business it was not recorded with the clerk of the county in which it was located as a partnership or as a business operating under an assumed name as required by law. On October 11, 1945, petitioner sold the bar for $25,000 and conveyed title by a bill of sale which petitioner executed as the sole vendor. Petitioner's sale of the bar business was largely brought about because his wife became ill in 1945 and was unable thereafter *390 to do any work whatsoever. With part of the proceeds of the sale petitioner bought a home, title to which was taken in the joint names of himself and his wife as tenants by the entirety. The major portion of funds realized on the sale was used for the purchase of a gasoline station, which was owned by petitioner and his brother, the wife having no interest therein. Petitioner and his wife during the year 1945 did not join together in good faith and for a business purpose to form a partnership. Issue 2. - Offset Against Capital Gain In order for petitioner to sell the tavern it was necessary to obtain the consent of Anna Tamol and her husband, who were the landlords, to his assignment of the lease to a purchaser of the bar business. Mrs. Tamol was perturbed when she found petitioner was about to sell the bar for $25,000. She believed she had been misled by petitioner as to the value of the bar when she sold to him at a bargain price of $10,000 and demanded $5,000 as consideration for the consent of herself and her husband to an assignment of the lease to a third person. A written agreement was entered into by the terms of which petitioner was to purchase a cashier's check made *391 payable to two escrow agents, who were to endorse the check over to Anna and Joseph Tamol, who, in consideration thereof, were to assign the lease to any subsequent purchaser of the bar business. In accordance therewith a check was purchased from the National Bank of Detroit, July 18, 1945, made payable to the escrow agents. When the first negotiations with the ultimate purchaser, Charles Nixon, took place in July 1945 current fuel and utilities bills remained unpaid. Mrs. Tamol apparently insisted such bills must be paid forthwith. Petitioner, for reasons undisclosed by the record, refused to negotiate further. Petitioner did not thereafter tender the cashier's check to the escrow agents or the Tamols. He returned the check to the bank and received the purchase price thereof. On October 11, 1945 Nixon purchased the bar business from petitioner for $25,000. The record is unsatisfactory with respect to the source and nature of the purchaser's leasehold rights in the business premises, but it is clear that he remained in the same location either by virtue of the Tamols' consenting to the assignment to him of petitioner's leasehold or the execution of a new lease. Thereafter, on November 27, 1945, the *392 Tamols instituted suit at law against petitioner in the Circuit Court for the County of Wayne, State of Michigan, the basis of said suit being the contract between petitioner and the Tamols wherein petitioner had agreed to pay the Tamols $5,000 as consideration for their assignment of the existing lease to a subsequent purchaser. Petitioner in his answer, filed in said court and cause, denied that he had executed the agreement and averred that his purported signature appearing thereon was in fact a forgery. It has been stipulated, however, that petitioner did execute the agreement and we understand therefrom that he does not here claim his signature thereon to be forged. The suit at law remained at issue until an undisclosed date in 1947, at which time the controversy was settled by payment by petitioner to the Tamols of $2,500. In reporting his capital gain from the sale on the partnership income tax return for the year 1945, petitioner listed in column 6, Schedule G, "Expense of sale and cost of improvements subsequent to acquisition on March 1, 1913," the amount of $5,000. This amount was in effect deducted from the sale price in computing the capital gain. On petitioner's amended *393 income tax return, Form 1040, Schedule D, there is an amount of $3,100 listed as an expense of sale in computing the capital gain. Petitioner elected in 1945 to report income from Ray's Bar on the cash receipts and disbursements basis. Issue 3. - Omission of Closing Inventory in Computation of Net Income The net income from the operation of Ray's Bar was computed on the partnership return filed for 1945 as follows: Period January 1, 1945 to October 11, 1945
GROSS INCOME
Gross receipts
$37,286.52
Less: Cost of goods sold
Opening inventory, Jan. 1, 1945
$ 800.00
Plus merchandise purchased
18,040.63
Total
18,840.63
Less: Closing inventory
None
Total cost of goods sold
18,840.63
Gross profit
$18,445.89
DEDUCTIONS
Salaries and wages
$ 2,893.00
Taxes
1,810.92
Depreciation
456.25
Other deductions authorized by law
2,755.33
Total deductions
$ 7,915.50
Ordinary net income
$10,530.39 Respondent has included as additional income the amount of $3,663.48, which we determined by him to be the value of the closing inventory. Petitioner did not include the inventory of the tavern in the sale price of the bar. Nixon purchased *394 the closing inventory for $3,663.48. He paid the purchase price in installments. The petitioner did not report any sales on the installment basis on any of his 1945 Federal income tax returns. In the ordinary course of business petitioner purchased liquor, beer and wines at wholesale and sold the same by the glass at retail. The purchase and sale of the merchandise purveyed by petitioner prior to the sale of the bar was an income producing factor. Opinion Issue 1 The first issue to be decided is whether petitioner's wife was a partner in Ray's Bar during the taxable year 1945. The leading case defining the essentials of a valid family partnership is Commissioner v. Culbertson, 337 U.S. 733. In the Culbertson case the Court said: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, *395 the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" From the inception of the business, it appears petitioner conducted himself as an individual proprietor. The bill of sale from Mrs. Tamol conveys title to petitioner as sole proprietor. Although petitioner testified that he and his wife entered into a partnership agreement, no written evidence thereof was produced and the record is silent as to the terms of a possible oral agreement. We can not believe any type of partnership agreement existed. On the assignment of the liquor license from Mrs. Tamol to petitioner, on the application for the license, on the bond in connection with the application, and on the Liquor Control investigation report, petitioner is repeatedly designated, and has affixed his signature where required, as the sole owner. At the end of the first year, 1944, petitioner reported all the income from the bar on his individual income tax return. We are unable to conclude he did so believing himself to be a *396 partner. On the application for employee's identification number under the Federal Insurance Contributions Act (F.I.C.A.), on the quarterly F.I.C.A. returns, on the retail liquor dealer's special Federal tax returns for 1944 and 1945, and on the renewal application for class C license, petitioner repeatedly identified himself to the State of Michigan and the United States as sole owner of the tavern. The foregoing facts do not prove per se that no partnership existed but they indicate the manner in which petitioner represented the ownership of the business to others, particularly the Michigan State Liquor Control Commission. It seems unlikely that petitioner would have represented Ray's Bar as a single proprietorship to the Michigan Liquor Control Commission when such misrepresentation is considered a serious offense and offenders are subject to fines, imprisonment or revocation of their licenses. Fox v. Liquor Control Commission, 29 N.W. 2d 891; Dzencol v. Liquor Control Commission, 30 N.W. 2d 273. On brief, petitioner argues he signed the above noted documents as sole owner for matters of convenience, and advances as further explanation therefor the fact *397 that in the bar business it was considered more appropriate for the man to be the owner and operator. Under present-day conditions there is little merit in this contention, as to-day women are engaged in all phases of business; we also take notice of the fact that Mrs. Tamol had been for several years sole owner of the liquor business prior to petitioner's purchase thereof. There is no evidence that the wife assumed liability for any debts or that she was ever so bound. There were no partnership records, no capital accounts, withdrawing accounts, or any current records to bear out the partnership theory. In determining whether a partnership existed, we should consider the wife's control of the income from the partnership. There is no evidence which indicates that the wife received any of the profits of the business at any time before its sale. A major proportion of the sale price was used by petitioner to purchase a gasoline station with his brother. His wife had no interest therein. Petitioner used the remainder of the proceeds of sale to purchase a home which is held in the joint names of himself and wife as tenants by the entirety. That the home is held in equal estate by petitioner *398 and his wife does not demonstrate control over the assets, income or proceeds of the sale of the alleged partnership business. On the contrary, we are justified by the record in concluding that, in so doing, petitioner was in effect carrying out the stated purpose for which he had been saving his earnings as a truck driver, to wit, the purchase of a home for his family. That the wife, on purchase of the home, was made a joint holder of the entirety estate is as readily explainable by reason of her status as petitioner's wife and his natural desire that the survivor of them should, upon the death of either, acquire complete title thereto as to attribute her interest therein to a possible partnership arrangement between them. We are persuaded the former is the true explanation, as the record is wholly silent as to other reasons for her acquisition of a joint interest in the home. Petitioner argues on brief that his wife made a $2,000 capital contribution to the alleged partnership. On trial, the impression engendered, by the testimony of both petitioner and his wife, was inescapable that his wife made him a gift of said sum. Abe Schreiber et al., 6 T.C. 707; affirmed *399 per curiam, 160 Fed. (2d) 108. Petitioner testified as follows: "Q. And how much of the original $10,000.00 that you paid for the bar did you invest? "A. Well, I invested the whole thing, but I got some help from my wife. My wife gave me $2,000.00." The wife testified as follows: "Q. Now, do you know how Raymond acquired the amount of $10,000.00 to pay for the bar? "A. Well, I had some money from my father, I had, I think it was $2,000.00 that I gave him, and we had been saving towards a home, so he had a few thousands of his own. * * *
"Q. Just when did he [wife's father] give you this $2,000.00? "A. Before my husband, when my husband needed it to finish getting the full amount to pay for the bar. "Q. And did you deposit the $2,000.00 into your bank account? "A. No, we did not. "Q. This $2,000.00 just appeared, is that it, from your father? "A. From my father. "Q. And you gave it to Mr. Beels? "A. Yes, and he kept all his money, as he told you, in his mother's safe until the sale went through, which wasn't a very long time. * * *
"Q. And what did you do with the money? "A. I gave it to my husband." John P. Denison, 11 T.C. 686; *400 affirmed per curiam, 180 Fed. (2d) 938. It is urged by petitioner that his wife rendered services in the conduct of the business and that such services were those of a partner. Petitioner was, from his advent into the bar business, hard put to obtain necessary help in the operation thereof. We have found as a fact that he conducted business virtually alone. The wife, when she was able to leave her minor children in the care of a responsible person, waited on bar customers both at tables and as bartender, but was able to do so only on occasional nights and Sundays. The record is devoid of proof of services on her part other than those reasonably to be expected of a wife under the circumstances existing. Her "help" was that which would be performed by a waitress and bartender, not that which denotes the degree of control over the conduct of business affairs usually ascribed to a partner. Upon the entire record we find no partnership existed between petitioner and his wife. Petitioner conducted the business as a sole proprietorship. We therefore hold that all of the income of Ray's Bar for the year 1945 is taxable to the petitioner. Issue 2 Petitioner conducted his *401 bar business in leased premises. His landlords were Anna and Joseph Tamol. At the date of the sale of the business the remaining term of the lease was in excess of three years. Although the lease was not offered in evidence and the record fails to disclose the contents thereof, we assume from the record as a whole that the lease contained a prohibition against an assignment of the lessee's interest without the consent of the lessor. In order to effect a sale of the business it was necessary for petitioner to assign the lessee's interest in said lease to the purchaser. Petitioner entered into a written agreement, dated July 19, 1945, to pay the sum of $5,000 to the lessors who agreed in consideration thereof to "assign a certain lease on the premises" to any subsequent purchaser. The $5,000 was to remain in the hands of two escrow agents in the form of a bank manager's check made to said agents as payee. Upon approval by the city and state authorities of the transfer to the purchaser of the liquor license held by petitioner, the check was to be endorsed to the Tamols by the escrow agents. Such a check was purchased by petitioner but was never delivered to the escrow agents or the Tamols. *402 Subsequent to the signing of the aforesaid agreement the check was returned to the issuing bank by petitioner and he received the purchase price thereof. On October 11, 1945, the bar business was sold to Charles Nixon (hereinafter sometimes referred to as purchaser). The record leaves us to conjecture with respect to the transfer to the purchaser of petitioner's interest in the lease. It is, however, apparent that the purchaser did in some manner acquire the right to conduct the bar business in the premises referred to in the agreement between petitioner and the Tamols. It is also apparent that the purchaser began business in his own right on the date of the sale. On November 27, 1945 the Tamols instituted suit at law in the Circuit Court for the County of Wayne, State of Michigan, for recovery of the $5,000 payment referred to in petitioner's agreement with them. Petitioner was named as defendant together with Anthony Lutomski, one of the above-mentioned escrow agents and attorney for the petitioner in the proceedings at bar. This controversy was settled some time subsequent to the close of the year 1945 by petitioner's payment to the Tamols of the sum of $2,500. Petitioner and *403 his wife filed income tax returns for the year 1945 on the cash basis. In said returns petitioner and his wife each included as income one-half of the net profits derived from the operation of Ray's Bar during said year. Petitioner filed a partnership return with respect to said business during said year, in which he seeks to deduct $5,000 as expense of sale of the business. The deduction is taken in his return of capital gains resulting from said sale. The respondent in his statement attached to the notice of deficiency states: "In computing the gain from the sale of the business, an amount of $5,000 claimed as an expense of sale is held not to be an allowable deduction since the amount was not paid in the taxable year 1945 and the liability thereof was contingent at the end of that year." On brief, in the only clearly expressed argument presented, petitioner relies upon the theory that he made an actual payment of the sum of $5,000 during the taxable year. He contends that the $5,000 bank manager's check was delivered to the escrow agents referred to in his agreement with the Tamols; that said agents were the agents of the Tamols and delivery to them constituted receipt by them *404 of said sum. The record does not lend support to petitioner's contention. On the contrary, it is clear that the manager's check was never delivered to the escrow agents but was withheld and cashed by petitioner. At no time during the taxable year 1945 was any sum paid to the Tamols by petitioner in consideration of the transfer of petitioner's leasehold interest in the premises to the purchaser. Petitioner has failed to sustain the burden of proof as to this contention. The petitioner having reported his income in the year involved on the basis of cash receipts and disbursements, not having paid in that year the amount here sought to be offset against capital gain, can not, under any theory, be permitted to treat said expense as having accrued during 1945. Roberta Pittman, 14 T.C. 449. We hold that the respondent rightly increased the capital gain reported in petitioner's income tax return for 1945 in the sum of $5,000. Issue 3 In the partnership return of income of Ray's Bar for 1945 petitioner has computed the cost of goods sold, basing his computation in the first instance upon an opening inventory at the beginning of the tax year, but indicating therein that *405 there was no amount representing closing inventory. The Commissioner has determined the value of merchandise representing closing inventory at the time of sale of the bar business to be $3,663.48. In his reply brief petitioner admits that "$3,663.47 was the inventory on hand at the time of the sale of the bar * * *." We are unable from his brief to gain a clear conception of petitioner's contention in regard to this issue, but he seems to rely upon the following propositions: (1) that the merchandise on hand at the time of sale of the business was sold in a separate transaction on the installment basis; (2) that "The amount of $3,663.47 involved herein cannot be determined to be inventory at the close of the taxable year, because it was sold as a separate item of the business." The arguments have no applicability whatsoever to this issue, particularly in view of the fact that petitioner has not reported the purported installment sale of the merchandise representing his closing inventory. Petitioner's second contention seems to be based upon the proposition that, the merchandise representing closing inventory having been sold in a separate transaction distinct from the sale of the *406 bar business, it thereby becomes a non-capital asset, and for that reason can not be treated as "inventory at the close of the taxable year." The case cited by petitioner, Williams v. McGowan, 152 Fed. (2d) 570, has no bearing upon the question actually involved here. Petitioner's income for 1945 derived from the operation of the bar could not be clearly determined without first ascertaining the cost of merchandise sold to the date of sale of the business. The decision as to whether or not opening and closing inventories are to be used in so doing is that of the Commissioner, Internal Revenue Code, section 22 (c). The only standard governing the exercise of the Commissioner's discretionary power to make such a decision is that he must in the first instance determine opening and closing inventories to be reasonably necessary in order to clearly reflect true income from operation of the business. With respect to such decision, the Commissioner is vulnerable only in case he fails to determine the necessity for opening and closing inventories or, having so determined, he failed to use discretion in so doing. The Commissioner has made his determination *407 that opening and closing inventories are necessary in ascertaining the cost of goods sold when merchandise is an income-producing factor. Regulations 111, Sections 29.22 (c)-1 [1] and 29.41-3 (1). In the instant case, the only income-producing asset pertaining to the operation of the bar business was merchandise in the form of liquor, beer and wines. Nothing appears upon this record which would indicate abuse of the Commissioner's discretion in requiring the use of opening and closing inventories. Failure by petitioner to use his closing inventory in computing the cost of goods sold has resulted in an unlawful reduction in his reported net income for the taxable year. *408 We are mindful of the fact that the section of the Regulations appearing in the footnote refers to closing inventories as being required at the "end of each taxable year." It may be that petitioner's argument is based, in part at least, upon the fact that having sold his merchandise on hand at the time of the sale of the bar business in October of 1945 he therefore had no closing inventory at the end of his taxable year, December 31, 1945. We are not in accord with this theory. Such a construction of the Regulations would render it void as not being within the standards set forth in Internal Revenue Code, section 22 (c). The cited section of the Code authorizes the Commissioner to require inventories when he finds them necessary in order to "clearly * * * determine the income of any taxpayer." We construe the Code to be aimed at the ascertainment of true income. True cost of goods sold in petitioner's business can not be determined without deducting from the total of the amounts representing opening inventory plus merchandise purchased during the year an amount representing merchandise on hand when he sold the business. The true resulting income from the business *409 can be arrived at on any other basis only by including the value of merchandise representing closing inventory in the gross receipts. The reported gross receipts from operation of the business do not include the amount of the sales price of the admitted remaining merchandise at the date of sale of the business, nor does it include the value thereof. Any other conclusion is precluded by the testimony and brief of the petitioner. On brief he relies on the fact that he disposed of the $3,663.48 worth of remaining merchandise on the installment sale basis. He testified on trial that he had not received any portion of the sales price by the close of the taxable year. We, therefore, conclude that he did not report any portion thereof as gross receipts. After reporting gross receipts in the amount of $37,286.52 the petitioner computes cost of goods sold and ordinary net income from operation of the business as follows: Gross Receipts
$37,286.52
Less: Cost of Goods Sold
Opening Inventory
$ 800.00
Plus Merchandise Purchased
18,040.63
Total
$18,840.63
Less: Closing Inventory
Total Cost of Goods Sold
18,840.63
Gross Profit
$18,445.89
Less: Expenses
7,915.50
Ordinary Net Income
$10,530.39
*410 It is obvious that the merchandise comprising the closing inventory is composed entirely of merchandise represented as opening inventory plus merchandise purchased during the tax year. It could have come into the hands of petitioner from no other source so far as this record discloses. Therefore we must of necessity conclude that the sum of $3,663.48 representing closing inventory is included in the sum of $18,840.63 represented by petitioner to be the total cost of opening inventory plus merchandise purchased during the tax year. The latter amount having been computed to be the cost of selling an amount of merchandise (gross receipts) which does not include either the sale price or value ($3,663.48) of merchandise on hand at the close of petitioner's business operation does not, therefore, reflect the true cost of goods sold. To contend, as petitioner seems to do, that he made a "sale" during the taxable year 1945 of the amount of goods representing closing inventory is inconsistent with the inventory method of accounting adopted by him and required by the Regulation. He insists that the sale was on the installment basis and that he received no portion of the sale price during the *411 taxable year. He is on the cash basis and therefore cannot be considered to have received any income from such sale during said year. He has nevertheless, by failing to include as closing inventory the value of goods on hand at the time of sale of his business, treated the sale price as having been entirely paid during the taxable year. Such treatment results in a distorted cost of goods sold rather than a clear reflection thereof. We, therefore, hold that the petitioner should have included in his computation of cost of goods sold the cost of goods remaining on hand at the time of the close of his business as closing inventory, and that the Commissioner has properly increased the net income from the business known as Ray's Bar in the amount of $3,663.48. Decision will be entered for the respondent Footnotes
1. Sec. 29.22(c)-1. Need of Inventories. - In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale, in which class fall containers, such as kegs, bottles, and cases, whether returnable or not, if title thereto will pass to the purchaser of the product to be sold therein. Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. Accordingly, the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract and goods out upon consignment, but should exclude from inventory goods sold (including containers), title to which has passed to the purchaser. A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected.↩